### DELAND *v.* FIDELITY HEALTH & ACCIDENT MUTUAL INSURANCE COMPANY.

1. INSURANCE—HEALTH AND ACCIDENT POLICIES—CANCELLATION.
    The issuance of health and accident insurance is governed by provisions of the insurance code and policies of such insurance may include a provision for cancellation by the insurer (CL 1948, §§ 521.1, 522.15).

2. SAME—CANCELLATION—OPTION AS TO RENEWAL.
    There is a distinction between a year-to-year insurance policy which is cancellable by the insurer and one in which the

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur, Insurance, § 436.
[2, 3, 8] 29 Am Jur, Insurance, §§ 259, 275, 282.
[2, 3, 8] Express provisions in life, accident, or health policies that authorize refusal of renewal premium or otherwise make renewal optional with insurer. 119 ALR 530.
[3, 8] 29 Am Jur, Insurance, § 160.
[5, 6] 29 Am Jur, Insurance, §§ 166, 167.
[9] 14 Am Jur, Costs, § 91 *et seq.*

option of renewal is reserved to the insurer in that in the former class of policies cancellation may be had at any time.

3. SAME—CONSTRUCTION OF POLICY—AMBIGUITY.

Where application for insurance provided for life income disability insurance, exterior of policy when folded had large type designating it as a noncancellable life income disability policy and last sentence of policy set forth date of termination but that it was renewable for a like term upon payment of a stated annual premium, the policy was subject to renewal on payment of premium notwithstanding another provision in small type permitting termination by insurer by giving it the option to accept premiums as such last-mentioned provision rendered the policy not only ambiguous but deceptive, when viewed in light of other provisions of policy.

4. SAME—CONSTRUCTION OF POLICY—NAME OF POLICY.

While the name that a policy bears does not necessarily determine its actual character, yet it may be considered, together with other facts and statements contained in said policy, in determining its true character.

5. SAME—AMBIGUITY—CONSTRUCTION OF POLICY.

Where an insurance policy is ambiguous and susceptible of two constructions, one of which is more favorable to insured than the other, the court will give it that construction which is most favorable to the insured.

6. SAME—CONSTRUCTION OF POLICY—TECHNICAL CONSTRUCTIONS— EXCEPTIONS TO GENERAL LIABILITY.

In construing policy of insurance, couched in language chosen by insurer, it must be given construction most favorable to insured of which it is susceptible, technical constructions are not to be favored and exceptions to general liability are to be strictly construed against insurer.

7. SAME—CANCELLATION CLAUSE—OMISSION—STATUTES.

Insurer under health and accident policy which did not contain cancellation clause as required by statute may not profit by · omission as statutory requirement that policy contain such clause was for the benefit of the insured (CL 1948, § 522.34).

8. SAME—INJUNCTION—MODIFICATION OF DECREE—CANCELLATION.

In insured's suit to restrain insurer from cancelling a health and accident policy, provision of decree that policy should continue in full force and effect throughout insured's life subject to payment of premiums is modified on appeal to

provide for cancellation when within the terms of the policy other than obscured provision leaving acceptance of renewal premium optional with insurer, where policy contained plainly worded provisions providing for termination upon occurrence of any loss for which indemnity is payable under certain provisions.

9. Costs—Failure of Either Party to Prevail.
   Where neither party fully prevails on appeal in insured's suit to restrain cancellation of health and accident policy by insurer, no costs are awarded.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted April 5, 1949. (Docket No. 12, Calendar No. 44,134.) Decided May 18, 1949.

Bill by Roy DeLand against Fidelity Health & Accident Mutual Insurance Company to restrain cancellation of health and accident insurance. Decree for plaintiff. Defendant appeals. Modified and affirmed.

*Howard & Howard,* for plaintiff.

*Gray & Gray (Frost & Ford,* of counsel), for defendant.

NORTH, J. Plaintiff in this suit in equity, commenced in June, 1947, sought to have the defendant company restrained from cancelling or discontinuing a policy issued by defendant to plaintiff in June, 1930. Hearing was had and plaintiff was decreed the relief sought. Defendant has appealed.

The policy in the principal sum of $1,000 provided for a monthly accident and monthly sickness indemnity, and also life insurance in event of death resulting from accident which in the instant case had accumulated from the initial amount of $1,000 to $1,500. The reason that defendant attempted to

cancel plaintiff's policy appears from 2 letters written by defendant to plaintiff, from which we quote:

"February 26, 1947    *    *    *
"Dear Mr. DeLand:
"In order that the company may complete plans for a change of charter to include life insurance in the near future, it will be necessary to discontinue by March 1 certain types of policies that were issued years ago. We do sincerely regret to inform you that your Policy No. C14186 is one of those. Since you have paid beyond the above date, we are enclosing our check for $52 representing full return of your premium to the renewal date, July 1, 1946.

"The nonrenewal action is taken in accordance with the following sentence which you will find under Additional Provisions on page 3 of your policy. 'The acceptance of any renewal premium shall be optional with the company.' "

"May 1, 1947    *    *    *
"Dear Mr. DeLand:
"I have been advised by our home office cashier that the company's check for $52 which was sent to you with our letter of February 26, 1947, has not been cashed.

"We assume it is not your intention to cash the check and want you to know that your Policy Number C14186 is still in full force and effect and will remain so until July 1, 1947. However, we wish to point out that no more premiums will be accepted on your policy."

The trial judge, the late George V. Weimer, in a filed memorandum so succinctly stated additional facts and the grounds for his conclusion that we quote from it quite at length:

"Plaintiff asks this court to restrain defendant from cancelling policy, exhibit A, sold and delivered to him June 11, 1930. On that day plaintiff signed an application for insurance, obviously prepared

and presented by E. L. Huntington, as defendant's agent. Therein appears: 'Kind of policy desired life income disability, class A.'   *   *   *

"On the exterior face of the policy in heavy type appears: 'Noncancellable life income disability policy.'

"At the top of first page appears in large bold type: 'Noncancellable life income disability policy.'

"Part 5, at the top of page 2, under the heading '50 percent accumulation' provides 'Each consecutive annual renewal of this policy shall add 10 percent to the amount payable for loss of life, but in no case shall the increased indemnity exceed 50 percent of the original sum for loss of life.' Under this provision the death benefit has now increased from $1,000 to $1,500.

"The last paragraph of the policy reads: 'This policy is issued in consideration of a policy fee of $4 and the premium of $52 for the period herein stated, taking effect at 12 o'clock noon standard time   *   *   *   and terminates at noon on the 1st day of July, 1931, but may be renewed for a like term or terms subject to all the conditions and provisions of this policy from term to term by the payment of annual premiums of $52 each, et cetera.'

"Nowhere in the policy appears anything in conflict with the foregoing, unless it can be found, as claimed by defendant company, in the short sentence (on page 3 of the policy): 'The acceptance of any renewal premium shall be optional with the company,' which is contained in the center of the second of 3 paragraphs   *   *   *   under the heading 'Additional Provisions.' This 1 sentence upon which defendant relies for its claimed right to cancel the policy, must be considered together with the other numerous provisions in these 3 paragraphs, and must be held to have been included therein in its relation to the context of those provisions. If there is any ambiguity or uncertainty, it must be resolved against the defendant company.

"On February 26, 1947, J. F. Hinkley, on behalf of defendant company, wrote plaintiff the letter, exhibit B. In that letter he expressed the real reason for seeking to cancel the policy as follows: 'In order that the company may complete plans for a change of charter to include life insurance in the near future,' and then he apparently recognized that plaintiff would be baffled by such action and added: 'The nonrenewal action is taken in accordance with the following sentence which you will find under "Additional Provisions" on page 3 of your policy.' He realized, of course, that plaintiff probably never during the 17 years had discovered that sentence, almost hidden as it was in that long paragraph.

"On May 1, 1947, Rex Edmunds, president of defendant company, wrote the plaintiff the letter, exhibit C. In that letter he retracted in part from the position taken in the former letter. * * *

"Clearly the action attempted in these 2 letters was never contemplated by the defendant when the policy was issued, nor during the ensuing 17 years, nor until it appeared essential to the proposed change of the charter of defendant company. The company never indicated in any way any intention that plaintiff should construe that 1 short sentence as now claimed by defendant. For 17 years plaintiff was lulled into a feeling of security by the continued acceptance of renewal premiums. * * * In my opinion the plaintiff is entitled to a decree."

Since they are closely interrelated we consider together the first 2 questions presented in appellant's brief:

"1. Did the defendant have the right under its policy issued to plaintiff to refuse to renew the policy by refusing to accept renewal premium due July 1, 1947?"

"2. Is the sentence contained in the policy of insurance issued by defendant to plaintiff under the heading of 'Additional Provisions' on page 3 of said policy, reading as follows: 'The acceptance of any

renewal premium shall be optional with the company,' inconsistent with the words on said policy reading: 'Noncancellable life income disability policy'?"

The policy here in suit is one for health and accident insurance. The issuance of such insurance is governed in Michigan by provisions of the insurance code. CL 1929, § 12388, as amended by PA 1945, No 223* (CLS 1945, § 12388, Stat Ann 1947 Cum Supp §. 24.211). Part 3, ch 2, § 15 of the code (CL 1929, § 12442† [Stat Ann 1943 Rev § 24.278]) provides that if done in the manner specified in the statute, the insurer may include in its policies of this type a provision for "cancellation at the instance of the insurer." But in its brief appellant says:

"The above cancellation provision if inserted in the policy issued the plaintiff would have given the defendant company the right to cancel the policy at any time. The defendant company did not choose to put this optional clause of cancellation in its policy. It therefore designated this policy 'noncancellable' and as far as the right of termination of the policy is concerned, the defendant company relied on the provision in the paragraph called 'Additional Provisions' which provided that the acceptance of any renewal premium was optional with the company. * * *

"The policy does not contain any provision, standard or otherwise, as to cancellation, but does contain a clause relative to nonrenewal."

Incident to decision herein it may be conceded, as appellant contends, that there is a distinction between the words "cancellation" and "renewal" in "year to year" policies. But the very pertinent query in the instant case is this: In view of the char-

---

* CL 1948, § 521.1.—Reporter.
† CL 1948, § 522.15.—Reporter.

acter of this policy both as to the manner in which it is printed and its provisions, can appellant be permitted to say either that it should be held to be a "year-to-year" policy, or one the insurer could terminate by refusing payment of an annual premium? We think not, because, as noted by the circuit judge, plaintiff's application accepted by the insurance company was for a policy which provided "Life Income Disability" insurance; and on the exterior face of the policy when folded there appears in large type: "NONCANCELLABLE LIFE INCOME DISABILITY POLICY," and this same designation of the policy appears again in like large type at the top of page 1 of the policy. And the last sentence in the policy in smaller type provides: "This policy * * * terminates at noon on the 1st day of July, 1931 but may be renewed for a like term or terms, subject to all the conditions and provisions of this policy from term to term by the payment of annual premiums of $52."

Notwithstanding its conspicuous label as being "life" insurance, this contract is not a life policy. Also notwithstanding it is prominently labeled "NONCANCELLABLE," the claimed right of defendant to refuse renewals would render the policy annually cancellable—i.e., nonrenewable. We are not impressed with defendant's contention that the conspicuous use of the word "noncancellable," as embodied in this policy, was justifiable as meaning only that the policy was noncancellable during a period for which a premium had been paid.

As against the construction that an insured would naturally put on the quoted provision to the effect that by paying his annual premiums his policy would "be renewed" from year to year, instead of being a term policy which the insurer might terminate at the expiration of any annual premium period, appellant relies upon a short sentence embodied in the middle of a rather long second paragraph under the

heading "Additional Provisions," which are numerous, which sentence reads: "The acceptance of any renewal premium shall be optional with the company." As above noted appellant now states: "The defendant company did not choose to put this optional (statutory) clause of cancellation in its policy. It therefore designated this policy 'noncancellable.' "

In our judgment the much obscured sentence: "The acceptance of any renewal premium shall be optional with the company" is inconsistent with the much more prominently printed words of the policy heretofore noted and renders the policy not only ambiguous but deceptive. And while it does not have a controlling bearing upon decision of the instant case, it may well be noted that for 17 years defendant has accepted and retained $52 annually paid by plaintiff as the premium on this policy; and that plaintiff has arrived at an age which renders him ineligible to obtain like insurance.

"While the name that a policy bears does not necessarily determine its actual character, yet it may be considered, together with other facts and statements contained in said policy, in determining its true character. *Doty* v. *American National Insurance Company,* 350 Mo 192 (165 SW2d 862, 143 ALR 1062). * * *

"One year term, and ordinary or whole life insurance, may be legally combined in one contract of life insurance (citing cases) ; but if this is done it must be done without rendering the policy ambiguous. * * * Where, as here, an attempt to effect such a combination results in an ambiguity in the policy, so that same is susceptible of two constructions, one of which is more favorable to insured than the other, the court will give it that construction which is most favorable to the insured." *Casebolt* v. *Central Life Ins. Co.* (Mo App), 180 SW2d 265.

In *Schultz* v. *Benefit Ass'n of Railway Employees of Chicago, Ill.*, 175 SC 182 (178 SE 867), the policy in bold print was termed *"NONCANCELLABLE,"* and in some miscellaneous provisions provided in smaller type that the insurer had the right to refuse to accept premiums for any renewal period. The following is from the court's opinion:

"The wording of the policy itself is confusing, ambiguous, and not at all clear. As before stated, in one place the policies are termed noncancelable, and down in the miscellaneous provisions, which are written in small type, the right is given to refuse to accept premiums on the policy for a renewal period. The two theories of the policy are inconsistent and the terms of the same are at least inconsistent. * * *. The policy is ambiguous. It is a trap to catch the unwary. It was conceived, according to the undisputed testimony, for the purpose of competing with other companies in an effort to hold out the belief that the policy was substantial and noncancelable. * * * Under the well-recognized rules of this and of other enlightened jurisdictions, the policyholder must be protected against confusing statements in policies, and, wherever there are two constructions that can be placed upon the policy, the construction most favorable to the policyholder will be adopted."

For a similar decision sustaining the insured's contention, see *Harwell* v. *Mutual Benefit Health & Accident Association*, 207 SC 150 (35 SE2d 160, 161 ALR 183), wherein it is said:

"It seems to us only fair that an insurer acting in good faith should insert in a conspicuous place in a policy an express unequivocal provision with respect to the right of renewal, especially where, as in this case, no provision is made for the cancellation of the policy."

In *Pietrantonio* v. *Travelers Ins. Co. of Hartford, Conn.,* 282 Mich 111, law applicable to the instant case is stated as follows:

"It is a principle of law too well established in this jurisdiction and others to need discussion or citation of authorities, that a policy of insurance couched in language chosen by the insurer must be given the construction of which it is susceptible most favorable to the insured; that technical constructions of policies of insurance are not favored; and that exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer. *Pawlicki* v. *Hollenbeck,* 250 Mich 38."

Cases, too numerous to permit detailed review herein, from other jurisdictions are relied upon by appellant wherein a somewhat stricter construction is placed upon insurance contracts by holding that such contracts must be construed as a whole and each provision therein rendered effective; but in this jurisdiction a more liberal rule of construction has been adopted, as noted in the *Pietrantonio Case, supra.* This rule of construction more favorable to the insured should be followed on the ground indicated in the *Harwell Case, supra.* And further, many of appellant's cited cases do not involve an insurance contract which, as in the instant case, is ambiguous or deceptive.

The contention of appellant hereinbefore considered cannot be sustained; but appellant asserts nonliability on the further ground that although the policy issued by it did not comply with the statutory provision about to be noted, that provision of the statute should be read into the policy for defendant's protection, since appellant substantially complied with the statute by giving notice to plaintiff of termination of his policy. The pertinent portion of the statute (insurance code, part 3, chapter 2, § 34) reads:

"No policy of casualty insurance, excepting workmen's compensation, but including all classes of automobile coverage, shall be issued or delivered in this State by any corporation or other insurer authorized to do business in this State for which a premium or advance assessment is charged, unless there shall be contained within such policy a provision * * * whereby the policy may be cancelled at any time by the company by giving to the insured a 5 days' written notice of cancellation," with provision for tender of subsequent payment of unearned premium. CL 1929, § 12461* (Stat Ann § 24.298).

In appellant's brief it is stated: "It is the contention of the defendant company that actually under the statutes of the State of Michigan there should have been a clause in this policy issued to plaintiff giving the defendant company the right to cancel the policy upon a 5-day written notice to the plaintiff;" and defendant asserts there was substantial compliance with the statutory provision for written notice in the 2 letters written by defendant to plaintiff. And "defendant therefore submits that this policy should be actually construed to have a cancellation clause in it." It would be a strange application of equitable principles to hold herein that in consequence of defendant's having issued a policy which was violative of law, it should be granted protection from liability under its policy. Obviously this statute was enacted not only as a requirement in policies of this type, but more particularly that one carrying casualty insurance should be definitely advised by the terms of his policy that it is subject to cancellation. Appellant's counsel concedes that this policy issued by defendant to plaintiff does not contain a cancellation clause. In consequence thereof we are not in accord with the contention that de-

---

* CL 1948, § 522.34.—REPORTER.

fendant should profit by its failure to comply with
the statutory provision that: "No policy of casualty
insurance  *  *  *  shall be issued or delivered in
this State by any  *  *  *  insurer  *  *  *  unless
there shall be contained within such policy a provi-
sion  *  *  *  whereby the policy may be cancelled
at any time by the company" after giving proper
notice.

The remaining question presented by appellant is:
"Should the policy be construed to be noncancellable
*during the lifetime of the plaintiff?*" Incident to
this issue it is said in appellant's brief:

"Even if this contention (that plaintiff's bill
should be dismissed) is not approved by this Court,
we wish to point out that the trial court went much
further in its decree than was justified even if plain-
tiff was entitled to relief under the facts of this
case."

In the respect just noted there is merit to appel-
lant's contention.  Appellant objected to the pro-
posed decree at the time it was settled by the trial
court.  One of the grounds asserted by appellant in
support of this appeal reads:

"The court erred in said decree in construing said
policy to be noncancellable by the defendant *during
the lifetime* of the plaintiff, subject only to the obli-
gation of the plaintiff to make timely payments of
premiums."

One of the provisions of the above character in
the decree is worded as follows:

"It is further ordered, adjudged and decreed that
said policy of health and accident insurance No.
·C14186 shall continue in full force and effect through-
out the lifetime of the plaintiff," subject to payment
of premiums.

This and other like provisions in the decree are evidently too broad in view of the terms of the policy. For example, in part 2 of the policy, provision is made for loss of "Either hand or foot or sight of one eye" for which the indemnity is one-third of the principal sum of $1,000; and in close proximity to this provision the policy contains the following: "The occurrence of any loss for which indemnity is payable under the terms of this part shall at once terminate the insurance affected by this policy." In view of the terms of the policy just above noted, it seems clear that under certain circumstances other than nonpayment of premiums this policy would not "continue in full force and effect throughout the lifetime of the plaintiff." For the reasons just indicated the decree may be modified in this Court. It would seem this might be easily and adequately accomplished by merely inserting a paragraph just preceding the last paragraph of the decree entered, which insertion could be substantially as follows:

But it is ordered, adjudged and decreed that none of the foregoing provisions of this decree shall bar the defendant insurance company, its employees, agents, successors or assigns, from asserting termination or cancellation of plaintiff's policy or refusing to accept payment of premiums thereon, provided so doing is within the provisions of plaintiff's policy other than the provision that: "The acceptance of any renewal premium shall be optional with the company" and not otherwise in conflict with decision in the instant case.

A decree in accordance with our opinion herein may be entered in this Court, but without costs to either party since neither has fully prevailed.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, DETHMERS, BUTZEL, and CARR, JJ., concurred.