RASKA v FARM BUREAU MUTUAL INSURANCE COMPANY OF
MICHIGAN

Docket No. 63507. Argued June 3, 1980 (Calendar No. 2).—Decided
    January 8, 1982. Rehearing denied *post,* 1119.

> Robert F. Raska and Mary L. Raska, husband and wife, claimed
> compensation for medical bills, disability income, and lost
> wages against Farm Bureau Mutual Insurance Company of
> Michigan for injuries Mary Raska suffered in a motor vehicle
> accident on March 24, 1973 (before the no-fault insurance act
> took effect), while she was driving a dump truck owned by
> Robert F. Raska Trucking, a sole proprietorship. Farm Bureau
> insured the trucks of Robert F. Raska Trucking under a "com-
> bination" business automobile liability policy which provided
> some medical benefits but no disability-income or wage-loss
> benefits, and insured the Raskas' three family cars under a
> "family" automobile policy, which included an endorsement for
> disability income coverage. The insurer denied liability under
> the family policy because of the exclusion under that policy of
> coverage of a named insured occupying an automobile owned
> by or furnished for the regular use of the named insured, other
> than one defined in the policy as an "owned automobile". The
> trucks did not come within the definition. The Raskas brought

REFERENCES FOR POINTS IN HEADNOTES

[1] 43 Am Jur 2d, Insurance §§ 237, 241, 259.
    Doctrine of unconscionability as applied to insurance contracts. 86
        ALR3d 862.
[2, 3, 6] 43 Am Jur 2d, Insurance § 259.
    Division of opinion among judges on same court or among other
        courts or jurisdictions considering same question, as evidence that
        particular clause of insurance policy is ambiguous. 4 ALR4th
        1253.
[4] 43 Am Jur 2d, Insurance §§ 257, 264.
[5, 8, 10-12] 7 Am Jur 2d, Automobile Insurance §§ 238, 241-244.
    Exclusion from "drive other cars" provision of automobile liability
        insurance policy of other automobile owned, hired, or regularly
        used by insured or member of his household. 86 ALR2d 937.
[7, 9] 43 Am Jur 2d, Insurance § 276.
[9] 43 Am Jur 2d, Insurance §§ 263, 264.
[10, 11] 43 Am Jur 2d, Insurance §§ 263, 264.

an action for breach of the insurance policy and for a declaratory judgment, arguing that the exclusion is void as contrary to public policy and that it should be construed against the insurer. The Macomb Circuit Court, Walter P. Cynar, J., granted summary judgment for the defendant as to the claim for lost-wage and disability-income benefits. The Court of Appeals, Danhof, C.J., and J. H. Gillis, J. (N. J. Kaufman, J., concurring), affirmed in an unpublished per curiam opinion (Docket No. 78-2). Plaintiffs appeal.

In an opinion by Justice Kavanagh, joined by Chief Justice Coleman and Justices Fitzgerald and Ryan, the Supreme Court *held:*

The exclusionary clause in this case is not ambiguous and is enforceable.

1. Any clause in an insurance policy is valid as long as it is clear, unambiguous, and not in contravention of public policy. The plaintiffs cite no public policy touching this case, but concentrate on the obscurity of the drafting on account of the placement of the clause in the policy, and the technicality of language used. The only pertinent question, therefore, is whether the exclusionary clause in this contract is ambiguous.

2. A contract is ambiguous when its words may reasonably be understood in different ways. However, if it fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

3. The plaintiffs also assert that the insurance policy did not meet their reasonable expectations. The expectation that a contract will be enforceable other than according to its terms surely may not be said to be reasonable. To allow a person who signs a contract without reading all of it or without understanding it to bind another to an obligation not covered by the contract because the first person thought the other was bound to such an obligation is neither reasonable nor just.

4. The capitalized reference on the first side of the endorsement to provisions on the second side and the capitalized heading "Exclusions" on the second side of the endorsement should leave no doubt that the use of a vehicle not named in the policy which is either owned by the insured or furnished for his or her regular use is excluded from coverage.

Justice Williams, joined by Justices Levin and Moody, dissented. He would hold that the "owned automobile" exclusion of the endorsement for disability income coverage is invalid under the traditional rule that an insurance contract, as a contract of adhesion, is construed in favor of the insured, and

also under the rule that it is construed in terms of the reasonable expectations of the insured, unless it can be shown that the effect of the qualifying clauses was understood by the Raskas.

1. The traditional rule is that the policy of insurance will be construed against the drafter in case of ambiguity or contradictions because the insurance contract is not made between parties of equal bargaining strength with each side choosing the language of the agreement and understanding what it means. The rule of reasonable expectations derives from the application of the general principle that any exception to the liability of the insurer must be so stated as clearly to apprise the insured of its effect. When a standardized insurance contract is put before a consumer to take it or leave it, the doctrine of the adhesion contract has been applied, in view of the disparate bargaining status of the parties, to ascertain the meaning of the contract which the insured would reasonably expect.

2. The meaning of the owned-automobile exclusion in this case can be discovered only by construing the whole endorsement for medical payments and disability coverage, which is printed on two sides of one sheet of paper. On the first side, the policy unconditionally announces that the endorsement covers every named insured in any automobile accident. The language indicates that the insured is covered while driving the cars with respect to which the insurance was specifically purchased and every other car as well. The exclusions, which are first mentioned and described on the second page of the form, limit the coverage, and the "owned automobile" exclusion depends in part upon the definition of an owned automobile found on the first page, so that understanding of the coverage requires a search and construction back and forth between the pages. The principle is that obscurant drafting is construed against the drafting insurer. The "owned automobile" exclusion in this case is invalid because it is ambiguous, unless it can be shown that the Raskas were personally advised of the exclusion.

3. The plaintiffs reasonably expected their family policy to cover them while driving the vehicles of Robert Raska Trucking. The undertaking of the insurer in the endorsement for disability income coverage is so unrestricted that without further clarification it would lead the insureds reasonably to expect coverage in almost all vehicular accidents, and certainly in the present one. The unconditional statement of coverage on the face of the endorsement would lead the insured logically to assume that the policy provides complete portability. Such a

reasonable expectation should not be defeated by the obscure drafting of the policy. The average consumer does not expect that an automobile owned by a family member or owned by an unrelated person but furnished for his regular use will be considered by the insurer not to be a "non-owned" automobile but, rather, to be the equivalent of an automobile owned by the insured for which he should obtain insurance. To make such an exclusion from the expected coverage, without explaining or offering the additional coverage the insured should purchase for protection in the excluded situation, is to set a trap for the policyholder. The average consumer does not have the skill, or may not make the attempt, to piece the statement of coverage together.

4. The policy and purpose of the "owned automobile" exclusion is to preclude, where an insured purchases more extensive protection on one of his automobiles than on another, the use of the greater protection to cover loss which occurs while the insured is occupying or driving the automobile with the lesser protection. This is, in itself, generally reasonable. Likewise, the policy behind the "furnished for regular use" exclusion is understandable, if the exclusion is made clear to the buyer. The insurer can rightfully insist on being paid an additional premium for the additional risk when the use of a non-owned automobile is not occasional but regular. However, it is not conscionable to sell non-owned automobile coverage and then to exclude the risk incurred by the policyholder while driving a regularly furnished automobile already insured for another owner without offering or, perhaps, even selling coverage for the excluded risk. If the insurer wishes to treat the automobile furnished for the regular use of the insured as an owned automobile, then it is incumbent on the insurer to offer coverage on such non-owned automobiles as it offers coverage on owned automobiles.

5. If one of the Raskas purchased both insurance policies in question after both the "owned automobile" and "furnished for regular use" exclusions had been fully explained and understood and after an opportunity to purchase special insurance to cover such exclusions had been presented, any expectation of coverage in the excluded situations would be unreasonable. However, if the Raskas honestly and reasonably believed that they had particularly chosen and paid for complete portability of coverage and the insurer had failed to inform them of the exclusions and had likewise not offered them supplementary insurance, their reliance on coverage would not be unreasonable because of the expectations created by the obscurant

drafting. There is, however, no record from which to resolve the question, and therefore the case should be remanded for an evidentiary hearing on whether Mary Raska reasonably expected the endorsement of the family policy to protect her when driving another vehicle and whether she was offered or, if offered, whether she rejected, supplementary insurance for disability income coverage on vehicles owned by Raska Trucking Company.

### OPINION OF THE COURT

1. INSURANCE — CONSTRUCTION OF POLICY — AMBIGUITY — PUBLIC POLICY.

Any clause in an insurance policy is valid as long as it is clear, unambiguous, and not in contravention of public policy.

2. INSURANCE — CONSTRUCTION OF POLICY — AMBIGUITY.

A contract of insurance is ambiguous and should be construed against its drafter if a fair reading of the entire contract leads to the understanding that there is coverage under particular circumstances and another fair reading of it is that there is no coverage under the same circumstances.

3. INSURANCE — CONSTRUCTION OF POLICY — AMBIGUITY.

A contract of insurance, however inartfully worded or clumsily arranged, which fairly admits of but one interpretation may not be said to be ambiguous.

4. INSURANCE — CONSTRUCTION OF POLICY — REASONABLE EXPECTATIONS.

The expectation that a contract of insurance will be enforceable other than according to its terms may not be said to be reasonable; to allow one person to bind another to an obligation not covered by the contract because the first person thought the other was bound to such an obligation is neither reasonable nor just.

5. AUTOMOBILES — INSURANCE — EXCLUSIONS — OWNED VEHICLE.

The "owned vehicle" exclusion clause in an endorsement providing disability income benefits in a family automobile liability policy which denies such coverage for injuries incurred by the named insured while occupying an automobile owned by or furnished for the regular use of the named insured or any relative is not ambiguous where a capitalized reference on the first side of the endorsement to provisions on the second side and a capitalized heading "Exclusions" on the second side of the endorsement leave no doubt that the use of a vehicle not

named in the policy which is either owned by the insured or
furnished for his or her regular use is excluded from coverage.

DISSENTING OPINION BY WILLIAMS, J.

6. INSURANCE — EXCLUSIONS — CONSTRUCTION OF POLICY.

*The language of an insurance policy chosen by the insurer must
be given the construction of which it is susceptible most favora-
ble to the insured in case of ambiguity or contradictions;
exceptions to the liability of the insurer are to be strictly
construed against the insurer.*

7. INSURANCE — CONSTRUCTION OF POLICY — CONTRACTS OF ADHESION
   — REASONABLE EXPECTATIONS.

*When a standardized insurance contract is put before a consumer
to take it or leave it, the doctrine of the adhesion contract has
been applied, in view of the disparate bargaining status of the
parties, to ascertain the meaning of the insurance contract
which the insured would reasonably expect.*

8. AUTOMOBILES — INSURANCE — EXCLUSIONS — OWNED VEHICLE.

*The "owned vehicle" exclusion clause in an endorsement provid-
ing disability income benefits in a family automobile liability
policy which denies such coverage for injuries incurred by the
named insured while occupying an automobile owned by the
named insured or any relative other than one defined as an
owned vehicle in the policy on the second side of the endorse-
ment, after providing apparently unlimited coverage on the
first side, should be construed against the insurer as ambigu-
ous.*

9. INSURANCE — EXCLUSIONS — CONSTRUCTION OF POLICY — REASON-
   ABLE EXPECTATIONS.

*Not only the provisions of an insurance policy as a whole, but
also the exceptions to the liability of the insurer, must be
construed so as to give the insured the protection which he
reasonably had a right to expect; to that end doubts, ambigui-
ties and uncertainties arising out of the language used in the
policy must be resolved in the insured's favor.*

10. AUTOMOBILES — INSURANCE — EXCLUSIONS — OWNED VEHICLE —
    REASONABLE EXPECTATIONS.

*An endorsement providing disability income benefits in a family
automobile liability policy which undertakes, by an uncondi-
tional statement of coverage on the face of the endorsement, to
provide coverage for the insured who sustains bodily injury
while occupying or through being struck by an automobile*

*would lead the insured logically to assume that it provides complete portability of the coverage for the named insured; such a reasonable expectation of coverage should not be defeated by the obscurant drafting of an "owned vehicle" exclusion clause on the second side of the endorsement.*

11. AUTOMOBILES — INSURANCE — EXCLUSIONS — REGULAR USE — REASONABLE EXPECTATIONS.

*The average consumer of insurance does not reasonably expect that an automobile owned by a family member or a vehicle owned by an unrelated person but furnished for his regular use would be considered by the insurer not to be a non-owned automobile, but the equivalent of an automobile owned by the insured for which he should obtain insurance, especially when he has purchased optional coverage for injuries caused by non-owned vehicles; such an exclusion from the expected coverage of the endorsement providing disability income benefits in a family automobile liability policy, without explaining or offering the additional coverage the insured should purchase for protection in the excluded situation, is to set a trap for the policyholder.*

12. AUTOMOBILES — INSURANCE — EXCLUSIONS — OWNED VEHICLE — UNCONSCIONABILITY.

*An insurer can rightfully insist on being paid for the additional risk when the use of a non-owned automobile by the insured is , not occasional but regular, but it is unconscionable for the insurer to sell coverage for non-owned automobiles in the endorsement providing disability income benefits in a family automobile liability policy and then to exclude from coverage a vehicle "furnished for the regular use" of the insured without explanation or without offering the excepted coverage.*

*Jack C. Chilingirian* for plaintiffs.

*Glime, Daoust, Wilds, Rusing & Widlak* (by *James R. Daoust* and *Denis R. LeDuc*) for defendant.

KAVANAGH, J. *(for affirmance).* This case involves the validity of an exclusionary clause in a pre-no-fault automobile insurance policy.

Any clause in an insurance policy is valid as

long as it is clear, unambiguous and not in contravention of public policy.

Although plaintiffs here assert that this "owned automobile" exclusion clause violates public policy, they cite us no public policy touching the area. Their argument is concentrated on the "obscurity" of the drafting on account of the placement of the clause in the policy, and the technicality of language used—both of which touch not on public policy but rather on the clarity or ambiguity of the words.

The only pertinent question, therefore, is whether the exclusionary clause in this contract is ambiguous, for if it is not ambiguous we are constrained to enforce it.

A contract is said to be ambiguous when its words may reasonably be understood in different ways.

If a fair reading of the entire contract of insurance leads one to understand that there is coverage under particular circumstances and another fair reading of it leads one to understand there is no coverage under the same circumstances the contract is ambiguous and should be construed against its drafter and in favor of coverage.

Yet if a contract, however inartfully worded or clumsily arranged, fairly admits of but one interpretation it may not be said to be ambiguous or, indeed, fatally unclear.

Plaintiffs also assert that as drafted the policy did not meet their "reasonable expectations". Still the expectation that a contract will be enforceable other than according to its terms surely may not be said to be reasonable. If a person signs a contract without reading all of it or without understanding it, under some circumstances that person can avoid its obligations on the theory that

there was no contract at all for there was no meeting of the minds.

But to allow such a person to bind another to an obligation not covered by the contract as written because the first person thought the other was bound to such an obligation is neither reasonable nor just.

The capitalized reference at the bottom of the first page and the capitalized heading "Exclusions" on the second page of the endorsement involved here persuade me that a fair reading of the entire policy should leave no doubt that use of a vehicle not named in the policy which is either owned by the insured or furnished for his or her regular use is excluded from coverage.

I would affirm.

COLEMAN, C.J., and FITZGERALD and RYAN, JJ., concurred with KAVANAGH, J.

WILLIAMS, J. *(dissenting)*. Defendant insurance company almost simultaneously (within 11 days) sold a family automobile insurance policy for the Raska family and a business automobile insurance policy for the unincorporated Raska Trucking Company. The family policy included a special endorsement for disability income. The business policy did not. Mrs. Raska was injured in an accident while driving a Raska Trucking Company vehicle. She unsuccessfully sought recovery for disability income. The insurance company defended on the basis of an "owned automobile exclusion" in the family policy. The trial court granted the insurance company a summary judgment and the Court of Appeals affirmed.

There are two issues in this case. The first is whether the "owned automobile exclusion" is valid, construing it within the four corners of the

family policy. The special disability income endorsement has a Dr. Jekyll/Mr. Hyde character. The front page grants complete and unlimited coverage for injuries occurring "while occupying or through being struck by an automobile", *i.e.,* any automobile. However, the back page excludes coverage "while occupying an automobile owned by or furnished for the regular use of either the named insured or any relative" except a car listed in the policy. In short, what the front page gives, the back page purports to take away. Validity or invalidity will be considered first under the traditional rule that an insurance contract, as a contract of adhesion, is construed in favor of the insured; and, second, under the rule of reasonable expectations. Under both rules we find the owned-automobile exclusion invalid as to the Raskas unless it can be shown that the effect of the qualifying clauses was understood by them.

The second issue is the impact in this case of the principle that the owned-automobile exclusion has the legitimate function of protecting an insurer from a policy purchaser taking adequate insurance on a low-risk owned vehicle and inadequate insurance on a high-risk owned vehicle and trying to collect from the adequate coverage on the inadequately insured owned vehicle. For example, if a person owns a conservative four-cylinder soundly built sedan and a racy eight-cylinder sports car and insures the sedan for twice as much as the sports car, he should not expect to use the sedan insurance to collect on the sports car. If Mrs. Raska, who was injured, had herself purchased both the family automobile insurance policy and the business insurance policy with full knowledge that the special disability income endorsement did not apply to the vehicles owned by the Raska

Trucking Company and she had been offered supplementary coverage so that she could have had such coverage, then Mrs. Raska would probably not be entitled to disability income benefits. However, if Mrs. Raska had purchased the family automobile insurance policy with the special disability income insurance policy seemingly providing complete portability, and her husband had purchased the business automobile insurance policy without being informed by the insurer that the special disability income endorsement would not protect him or Mrs. Raska if either were injured in a Raska Trucking Company vehicle and without being offered a policy to provide such coverage, then in that case Mrs. Raska probably should be covered, particularly because of the obscurant drafting of the family automobile insurance policy. The problem with this case is that it comes to this Court on summary judgment with sparse pleadings, which illuminate not at all the circumstances surrounding the purchase of the two automobile insurance policies.

So it is impossible on the present record for this Court to know the favorable and unfavorable factors in the conduct of the respective parties. We are left with the obscurant drafting of the disability income endorsement and no information as to whether the Raska family with a purchase of a business automobile insurance policy from the same insurance company within 11 days should or should not have reasonably realized or been informed that their disability income endorsement in the family policy was not meant to cover them in Raska Trucking Company vehicles. As a consequence, the order granting summary judgment to the defendants is vacated and the matter is remanded to the trial court for further proceedings

not inconsistent with this opinion. The judgments of the trial court and Court of Appeals are reversed.

## I. FACTS

Defendant Farm Bureau Mutual Insurance Company of Michigan issued plaintiffs Mary and Robert Raska a family automobile policy on February 5, 1973 for their three family cars. The policy included a special endorsement for disability income and medical benefits. On February 16, 1973, Farm Bureau issued a combination (business) automobile policy to Robert Raska, doing business as Robert Raska Trucking. As relevant, the business policy provided some medical coverage but no disability-income or wage-loss benefits.

Plaintiffs allege but did not plead that "the defendant-appellee never informed plaintiffs-appellants that they would need duplicate coverage on the commercial vehicles for the special endorsements that appeared on the family policy". In other words, plaintiffs say that defendant at the time of purchase of the combination policy did not tell them that the "owned vehicle" exclusion clause in the family policy's endorsement would deny plaintiffs disability-income or wage-loss benefit coverage while they drove vehicles used in plaintiff Robert Raska's trucking business. Further, it is not of record whether the insurer offered disability-income coverage to override the "owned auto" exception.

On March 24, 1973, plaintiff Mary Raska was injured in a collision with another vehicle while driving a Robert Raska Trucking dump truck.

Plaintiffs Raska sought compensation from defendant Farm Bureau for all medical bills, disabil-

ity income, and lost wages resulting from the injuries sustained by Mary Raska in a suit alleging breach of contract and requesting relief by way of declaratory judgment. Plaintiffs alleged that both the combination policy and the family policy protected Mary Raska. The family policy provided:

"PERSONS INSURED.
"Division 1. To or for the named insured and each relative who sustains bodily injury or death caused by accident, while occupying or through being struck by an automobile."

In response Farm Bureau moved for summary judgment or, in the alternative, for declaratory judgment to determine its liability, if any, under the policies. Farm Bureau contended, basically, that plaintiffs had failed to present it with proof of medical expenses over and above those paid or payable by Blue Cross, as required by the terms of the combination policy. Farm Bureau further, and for this case significantly, contended that the family automobile policy, by its terms, did not apply to an accident involving a truck owned by Mary Raska's husband's business.

This latter contention was based on the following provisions in the family policy:

"EXCLUSIONS. This policy does not apply under Coverage C [medical payments and disability income] to Bodily Injury:

*     *     *

"(b) sustained by the named insured or a relative (1) while occupying an automobile owned by or furnished for the regular use of either the named insured or any relative, other than an automobile defined herein as an 'owned automobile.' "

"Owned automobile" was defined under a section entitled "Definitions" as follows:

"(a) a private passenger, farm or utility automobile *described in this policy* for which a specific premium charge indicates that coverage is afforded,

"(b) a trailer owned by the named insured,

"(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided (1) it replaces an owned automobile as defined in (a) above, or the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and (2) the named insured notifies the company within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or

"(d) a temporary substitute automobile" (emphasis supplied).

The trial court denied Farm Bureau's motion for summary judgment respecting the controversy relating to the payment of medical expenses under the business policy since a factual question existed as to the amount of Blue Cross payments. However, as respects the subject matter of the appeal to this Court, the trial court granted Farm Bureau's motion for summary judgment under the family policy by giving effect to the "owned vehicle" exclusion clause found in that policy, thus finding plaintiffs not entitled to lost wages and disability income. The trial court, by construing together the "Persons Insured", the "Exclusions" and the "Definitions" sections, decided that the dump truck involved in the accident was not an "automobile defined herein as an *owned automobile*" in the family policy and that the dump truck was owned by a named insured under the policy, *i.e.,* Robert Raska, since doing business as Robert

Raska Trucking did not serve to create a separate entity apart from the sole proprietor. The trial court opined that the provisions of both policies must be complied with and that the purchase of two policies by the same party did not, by itself, insure coverage for any injury suffered by the insured or a relative.

The Court of Appeals affirmed in an unpublished per curiam opinion, holding that the trial court properly awarded Farm Bureau summary judgment on the basis of the "owned vehicle" exclusion in the family policy. Because it found an absence of ambiguities or unconscionable results, the Court of Appeals felt compelled to enforce the insurance contract as written. However, Judge KAUFMAN, writing separately, found the drafting style of the insurance policies seriously wanting.

Although we consolidated this case with that of *State Farm Mutual Automobile Ins Co v Ruuska, ante,* p 321, since both cases involved the automobile insurance industry's use of substantively similar "owned vehicle" exclusions, the two cases are not otherwise similar. The statutory milieus and the types of coverage at issue in the two cases are extremely different and thus what is said as to one case, especially with respect to public-policy considerations, may have little applicability to the other. Whereas *Ruuska* concerned statutorily required liability insurance coverage respecting an accident that occurred after the enactment of no-fault automobile legislation, 1972 PA 294; MCL 500.3101 *et seq.;* MSA 24.13101 *et seq.,* and had to be decided under its provisions, the present case involves an automobile accident which occurred prior to the effective date of the no-fault legislation, requiring it to be resolved in accordance with then-applicable statutory provisions.

## II. REVIEW OF INSURANCE POLICY LANGUAGE

This Court is made up of human beings who are aware that very few insureds will try to read the detailed, cross-referenced, standardized, mass-produced insurance form, nor necessarily understand it if they do. Courts generally have gradually moved away from the traditional rule of *caveat emptor,* realizing that the modern insurance contract is not made between parties of equal bargaining strength with each side taking a part in choosing the language of the agreement and understanding what the contract means.

Thus the approach we must take in examining insurance contracts such as the one in issue was accurately described by the New Jersey Supreme Court as follows:

"An insurance policy, though in form a contract, is a product prepared and packaged by the insurer. The buyer scarcely understands the detailed content of what he is buying. When a court construes a policy, it cannot be indifferent to that reality." *DiOrio v New Jersey Manufacturers Ins Co,* 63 NJ 597, 602; 311 A2d 378, 381 (1973).

As a consequence Michigan and other courts in this country have generally recognized two important rules in construing insurance contracts. The first rule is the common traditional black-letter law that a contract will be construed against the drafter in case of ambiguity or contradictions. Our Court spoke to this in an insurance contract as follows:

"It is a principle of law too well established in this jurisdiction and others to need discussion or citation of authorities, that a policy of insurance couched in language chosen by the insurer must be given the *con-*

*struction of which it is susceptible most favorable to the insured;* that technical constructions of policies of insurance are not favored; and that exceptions in an insurance policy to the general liability provided for are to be strictly construed against the insurer. *Pawlicki v Hollenbeck,* 250 Mich 38 [229 NW 626 (1930)]." (Emphasis added.) *Pietrantonio v Travelers Ins Co of Hartford,* 282 Mich 111, 116; 275 NW 786 (1937).

The second rule is the outcome of long application of the first rule by the courts and is often referred to as the rule of reasonable expectations. This Court spoke to that rule in *Zurich Ins Co v Rombough,* 384 Mich 228, 232-233; 180 NW2d 775 (1970), as follows:

"Justice Tobriner, writing for the California Supreme Court in the case of *Gray v Zurich Ins Co,* 65 Cal 2d 263, 269-270; 54 Cal Rptr 104; 419 P2d 168 (1966), construing similar provisions said:

" 'In interpreting an insurance policy we apply the general principle that doubts as to meaning must be resolved against the insurer and that *any exception to the performance of the basic underlying obligation must be so stated as clearly to apprise the insured of its effect.*

" 'These principles of interpretation of insurance contracts have found new and vivid restatement in the doctrine of the adhesion contract. As this court has held, a contract entered into between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a "take it or leave it basis" carries some consequences that extend beyond orthodox implications. Obligations arising from such a contract inure not alone from the consensual transaction but from the relationship of the parties.

" 'Although courts have long followed the basic precept that they would look to the words of the contract to find the meaning which the parties expected from

them, they have also applied the doctrine of the adhesion contract to insurance policies, holding that in view of the disparate bargaining status of the parties *we must ascertain that meaning of the contract which the insured would reasonably expect.'*" (Emphasis added.)

### III. The Rule of Construction "Most Favorable to the Insured"

Does the insurance contract in this case contain such doubt, contradiction or ambiguity that it must be construed in favor of the insured?

The medical payments and disability income coverage endorsement here at issue is printed on two sides of one sheet of paper. On the front side, after describing what benefit payments are available under two capitalized headings, "Hospital and Medical Expense Benefit" and "Disability Benefit", there follows a similar capitalized heading "Persons Insured". Here the reader is advised as follows:

"Persons Insured.
"Division 1. To or for the named insured and each relative who sustains bodily injury or death caused by accident, while occupying or through being struck by an automobile."

If the policy purchaser happened upon this language, he or she would logically assume that his or her insurance covered *any* "accident, while occupying or through being struck by an automobile".

The insurer has here published the flat, outright, unconditional announcement that every named insured is covered by the endorsement in any automobile accident. This language indicates that the insured is covered driving the cars with respect to which the insurance was specifically

purchased *and every other car as well.* In short, the policy provides complete portability. As plaintiffs remark in their brief,

"A liberal reading and construction of the family policy would extend such coverage to any person covered by either policy."

Plaintiffs further argue in their brief, but do not include in their complaint,

"The defendant-appellee at no time made it known that the exceptions embedded in the language of the contract would allow them to escape liability."

It would not be unreasonable then to say that the "Persons Insured" language raises high expectations and, perhaps as it turns out, a false sense of security.

The third heading below the "Persons Insured" heading is entitled "Definitions". The definition of "owned automobile" is fully set forth in Part I. For our present analysis all that is necessary to understand is that an "owned automobile" is one that is "described in this policy" and for which premiums have been paid to afford coverage. At this point it does not appear that the "owned automobile" definition has any particular significance. It has significance only in connection with exclusions on the reverse side of the page.

One must turn the page at the end of the definition section. It is fair to say that the reader is warned of further provisions by the capitalized note at the bottom of the page stating "THE PROVISIONS ON THE BACK OF THIS FORM ARE HEREBY REFERRED TO AND MADE A PART THEREOF *[sic]*". When one turns the page the heading "Exclusions" is first found.

The policy purchaser who reads under "Persons Insured" of unlimited coverage might have been better informed if the presence of "Exclusions" could have been learned in the same glance.

Under "Exclusions" is the exception to the coverage here in issue: "This policy does not apply under Coverage C [medical payments and disability income] to Bodily Injury: * * * (b) sustained by the named insured or a relative (1) while occupying an automobile owned by or furnished for the regular use of either the named insured or any relative". After this comes the exception to the exclusion: "other than an automobile defined herein as an 'owned automobile'", which the previous "Definition" section advised us was the specifically insured automobile. In sum, we are supposed to be able to piece together the absolutely contradictory language in different paragraphs on different pages so as to understand that coverage is available "[t]o or for the named insured and each relative who sustains bodily injury or death caused by accident, while occupying or through being struck by an automobile" except (turn the page) where the automobile occupied is "an automobile owned by or furnished for the regular use of either the named insured or any relative" (turn back the page) unless such automobile is one insured under the policy.

This is a jigsaw-puzzle statement of coverage. First, one has to realize that until one has all the pieces together any statement may be qualified or altered by another statement. Second, one has to recognize and find these other pertinent pieces. Third, one has to put them together in proper order. When one gets it all together, one has a more or less coherent statement which negates and contradicts the absolute coverage previously

announced. But again, until one gets it all together, one cannot be sure of what coverage exists —and there is no guarantee that one will know when one has it all together.

To recapitulate, coverage is first announced as absolutely unlimited. There is no suggestion whatsoever of any limitation. On the other hand, if one turns to the back side of the page, it is true that there is a section entitled "Exclusions" and by a jigsaw-puzzle search and construction back and forth between the pages, a series of contradictory limitations can be affixed to the previously unlimited coverage. It is this process which causes the plaintiffs to argue that they were unaware of any limitations and that the insurance company mentioned none.

At this point it is instructive to quote from *DeLand v Fidelity Health & Accident Mutual Ins Co,* 325 Mich 9, 19; 37 NW2d 693 (1949), as follows:

"Cases, too numerous to permit detailed review herein, from other jurisdictions are relied upon by appellant wherein a somewhat stricter construction is placed upon insurance contracts by holding that such contracts must be construed as a whole and each provision therein rendered effective; but in this jurisdiction a more liberal rule of construction has been adopted, as noted in the *Pietrantonio Case [Pietrantonio v Travelers Ins Co of Hartford,* 282 Mich 111; 275 NW 786 (1937)]."

*DeLand* concerned an insurance policy which prominently indicated it was noncancellable but also contained a more obscure sentence found in the middle of the second of three paragraphs under the heading of "Additional Provisions", which provided that "[t]he acceptance of any renewal premium shall be optional with the com-

pany". This Court affirmed the trial court's decree against the insurance company preventing it from terminating the policy on the basis of the option.

The principle in *DeLand* is of direct importance in construing this case. There a prominent notice of noncancellation was purportedly countermandable by a contradictory clause making acceptance of a renewal premium optional. *DeLand* held the later clauses would not justify termination of the contract. The principle, of course, is that one cannot subsequently steal away what one has previously so convincingly given.

While it is arguable that the "owned automobile exclusion" in the instant case is less obscure than the clause of retroaction in *DeLand,* if it is, it is not so in a degree sufficient to ignore the principle stated in *DeLand. DeLand* speaks straightforwardly to the principle that obscurant drafting is construed against the drafting insurer. This is a rule we follow here today and we find the "owned automobile exclusion" a piece of obscurant unsupportable drafting.

The case of *Wadsworth v New York Life Ins Co,* 349 Mich 240, 257; 84 NW2d 513 (1957), like *DeLand,* deals with an insurance contract that in one breath says one thing but in another says something else. In *Wadsworth,* unlike the instant case, the language is juxtaposed. Here is the *Wadsworth* language:

" '18 Write policy to take effect

" '(a) as of last date of parts 1 and 2 of this application _____ (x)

" '(b) as of date policy is written_____ ( )

" '(c) as of _____ 19_____

" 'It is mutually agreed that:

" '1. If the applicant shall have paid the soliciting agent in cash, as indicated in item 25 above, an amount

which equals the full first premium for the policy applied for, and if the company shall receive evidence satisfactory to it that at the time of completion of this application the proposed insured (and the applicant for the child's protection benefit, if any) was an acceptable risk for said policy at the company's published premium rate therefor, the policy as applied for shall be deemed to be in effect as from the date specified in item 18 above as if it had been delivered.' "

In other words, from the top lines it would clearly appear that the effective date of the policy was "as of [the] last date of parts 1 and 2 of this application", whereas the agreement below contradicts the first statement and would set the date as of some other time. This Court refused to permit a policy to be nullified by the "agreement" provision.

A Philadelphia lawyer, after some study, might understand that the defendant insurance company in its obscurant drafting was avoiding liability if the insured was in an accident in a car owned by or furnished for the regular use of him or her other than a car specifically insured in the policy. It is quite another matter whether an ordinary person in Hickory Corners or Detroit should reasonably be expected to understand this convoluted contradictory language and structure.

We hold that the "owned automobile exclusion" in this case is invalid unless it is shown that the Raskas were personally advised of the exclusion.

## IV. THE RULE OF REASONABLE EXPECTATIONS

The traditional rule that ambiguities will be construed against their drafter has done yeoman's service for insureds seeking relief from provisions of their insurance policies. However, as the Iowa Supreme Court has observed when considering the ability of traditional rules of construction to effec-

tively and justly resolve problems arising under insurance policies,

"The mass-produced boiler-plate 'contracts' necessitated and spawned by the explosive growth of complex business transactions in a burgeoning population left courts frequently frustrated in attempting to arrive at just results by applying many of the traditional contract-construing strategems." *C & J Fertilizer, Inc v Allied Mutual Ins Co,* 227 NW2d 169, 175 (Iowa, 1975).

Thus instead of straining such traditional rules to the breaking point, courts gradually started to speak more openly and forthrightly in terms of the "reasonable expectations" of an insured in purchasing certain insurance.[1] See, *e.g., Kievit v Loyal Protective Life Ins Co,* 34 NJ 475, 482-483; 170 A2d 22, 26 (1961); *Gray v Zurich Ins Co,* 65 Cal 2d 263, 273-275; 54 Cal Rptr 104; 419 P2d 168, 174-175 (1966); *Zurich Ins Co v Rombough,* 384 Mich 228, 232-233; 180 NW2d 775 (1970). However, the judicial willingness to construe an insurance contract in terms of "reasonable expectations" did not mean that the courts stopped considering the problem of ambiguities in insurance policy provisions. Indeed, the presence or absence of ambiguities continued to serve as an aid or crutch in the determination of an insured's "reasonable expectations".[2] As one court early stated,

---

[1] As Professor Keeton notes, courts had often either strained the outer limits of the theory of resolving ambiguities against the insurer, pressed beyond such a rationale, or even invented ambiguity where none existed, all to reach a result which, "if * * * supportable at all, generally it is because the principle of honoring policyholders' reasonable expectation applies". Keeton, Basic Text on Insurance Law, § 6.3(a), pp 353-356.

[2] By this discussion we do not wish to imply that a finding of ambiguity in relevant policy provisions is required as a condition precedent for a determination of "reasonable expectations". *Stordahl v Government Employees Ins Co,* 564 P2d 63, 66 (Alas, 1977).

"Not only the provisions of the policy as a whole, but also the exceptions to the liability of the insurer, must be construed so as to give the insured the protection which he *reasonably had a right to expect, and to that end* doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor." *Coast Mutual Building-Loan Ass'n v Security Title Ins & Guarantee Co,* 14 Cal App 2d 225, 229; 57 P2d 1392, 1393 (1936) (emphasis supplied). See also *Allen v Metropolitan Life Ins Co,* 44 NJ 294, 305-306; 208 A2d 638, 644 (1965); *Gray, supra,* 273-275; *INA Life Ins Co v Brundin,* 533 P2d 236, 241 (Alas, 1975).

Plaintiff insureds argue they reasonably expected their family policy to cover them while driving the vehicles of Robert Raska Trucking. As we read plaintiffs' brief, these "reasonable expectations" are based on the broad sweep of the language in the family policy providing the sought-for coverage, and the concomitant lack of any warning in the policy or by the insurance company that such expansive language was subject to the exclusionary clause in issue. In essence then, plaintiffs contend that the undertaking of defendant insurer to insure "the name insured * * * who sustains bodily injury * * *, while occupying or through being struck by an automobile" is so unrestricted that without further clarification it would lead the insureds reasonably to expect coverage in just about all vehicular accidents, and certainly the present one.

Most people would agree that the average insurance consumer purchasing a policy providing non-owned automobile protection enters into that agreement with the reasonable expectation that he will be protected whenever he drives a non-owned automobile. The unconditional statement of coverage on the face of the instant endorsement would lead the insured logically to assume that the in-

stant policy "provides complete portability". Such
a reasonable expectation should not be defeated by
the obscurant drafting of the policy.

The average consumer does not expect that an
automobile owned by a family member or owned
by an unrelated person but "furnished for [his]
regular use" will be considered by the insurer not
to be a "non-owned" automobile but, rather, to be
the equivalent of an automobile owned by the
insured, for which he should obtain insurance.
Even if the automobile is owned by a relative or
furnished for the insured's regular use, it is still
an automobile which belongs to someone else. The
average consumer does not expect to have to buy
insurance on someone else's automobile, especially
when he has purchased non-owned vehicle cover-
age.

To make such an exclusion from the expected
coverage, without explaining or offering the addi-
tional coverage the insured should purchase to
protect himself or herself in the excluded situa-
tion, is to set a trap for the policyholder. The
average insurance consumer, who does not have
the skill to piece this jigsaw-puzzle statement of
coverage together or who, like most of us, has been
intimidated by the language, detail and organiza-
tion of insurance policies into not even making the
attempt, cannot reasonably be expected to antici-
pate this exclusion.

In balancing the expectations of the Raskas,
particularly in light of the all-inclusive language
of the coverage, with the obscurant language of
the "owned automobile exclusion", we do not find
their expectations at all unreasonable and we hold
that they could properly expect coverage.

## V. IMPACT OF SALE OF FAMILY AND BUSINESS INSURANCE POLICIES TO RASKAS

The second issue requires this Court's determination whether the general policy behind the "owned automobile exclusion" or "furnished for regular use", despite the obscurant drafting in this case, should prevail over the apparent, absolute coverage and portability granted by the particularly purchased special endorsement for disability income, or vice versa.

The policy and purpose of the "owned automobile exclusion" is to preclude, where an insured purchases more extensive insurance protection on one of his automobiles than on another, the use of the greater protection to cover loss which occurs while the insured is occupying or driving the automobile with the lesser protection. The insurer rightly requires the insured to purchase coextensive coverage on his two (or more) automobiles if he desires coextensive protection in respect to his two (or more) automobiles.

Such a requirement and policy by the insurer is, in itself, generally reasonable. The average consumer should understand that to obtain protection in respect to all the automobiles he owns he must purchase coverage on all the automobiles he owns. Likewise, if he expects to enjoy the same kind of coverage, he should understand he must buy the same kind of coverage.

The cogency of this policy is readily apparent and insurance companies deserve protection against unfairly being taken advantage of by those who consciously seek more compensation than they are due or have paid for.

Likewise the policy behind the "furnished for regular use" exclusion is understandable, if the exclusion is made clear to the buyer. The insurer's

risk is indeed greater when the use of a non-owned automobile is not occasional but regular. The insurer can rightfully insist on being paid for the additional risk. If it were to ask for additional payment, for example, based on the number of miles automobiles owned by others are driven a year, and payment were refused, the exclusion of the additional risk would be entirely conscionable. What is not conscionable is to sell non-owned automobile coverage and then to exclude the risk incurred by the policyholder while driving a regularly furnished automobile already insured for another owner without offering or, perhaps, even selling coverage for the excluded risk.

The circumstances here relate only to the amount of the additional premium that is appropriate if the insured is regularly driving another automobile. It is not consonant with the conscionable treatment of the policyholder for the insurer to fail to explain the exclusion from the coverage the insured thinks he is buying, *or to fail to offer the excepted coverage* for sale. If the insurer wishes to treat the non-owned but "furnished for regular use" automobile as an owned automobile, then it is incumbent on the insurer to offer coverage on such non-owned automobiles as it offers coverage on owned automobiles. It may not properly avoid all responsibility by simply writing a nondisclosed exclusion from the expected coverage.

The second issue in this case is whether the Raskas consciously violated the policies behind the "owned automobile exclusion" and "furnished for regular use" exclusion or whether the insurance company unfairly caused either or both of them to believe they had absolute coverage for driving other automobiles including the Raska Trucking Company vehicles, despite the latent presence of

an "owned automobile exclusion", of which they might have been unaware or which they might not have understood.

Certainly, if either Robert Raska or Mary Raska purchased both the family and business automobile insurance policies in question after both the "owned automobile" and "furnished for regular use" exclusions had been fully explained and understood and after an opportunity to purchase special insurance to cover such exclusions had been presented, any expectation of protection on an "owned automobile" or in an automobile "furnished for regular use" would be an unreasonable expectation. However, if the Raskas honestly and reasonably believed that they had particularly chosen and paid for complete portability and the insurer had failed to inform them of the exclusions and had likewise failed to offer them supplementary insurance to fill the gap, their reliance on coverage would not be unreasonable because of the expectations created by the obscurant drafting.

However, the present state of the record is such that it is impossible to know what the actual facts were. For example, we don't know whether either or both of the Raskas knew of and understood either or both of the exclusions. We don't know whether the insurer or his agent attempted to point out and explain either or both of the exclusions. We don't know whether the insurer then had available optional coverage to protect against the exclusions, nor do we know whether the insurer or his agent offered such coverage to either or both Mary and Robert Raska. We don't know whether the truck in question was in fact furnished for Mary Raska's regular use, assuming that driving such a vehicle came within the intendment of the statute. In short, the record be-

fore us is inadequate for a summary judgment decision.

The case must therefore be remanded for an evidentiary hearing to give the insurance company and Mary Raska an opportunity to show whether or not she reasonably expected the specially purchased disability income endorsement to protect her not only when driving a family vehicle but any other vehicle by whomsoever owned or whether or not furnished for regular use and whether or not she was ever offered or, if offered, whether she or anyone who properly could be said to be acting for her, rejected supplementary disability income insurance covering Raska Trucking Company vehicles.

The order of summary judgment for defendant is vacated and the matter is remanded as above indicated.

LEVIN and BLAIR MOODY, JR., JJ., concurred with WILLIAMS, J.