**ALLSTATE INSURANCE COMPANY, INC., an Illinois corporation, Plaintiff,**

v.

**Mark A. KING, a Michigan resident; Linda Kay King, a Michigan resident; Roger A. Richard, an Indiana resident; Peter William Rossow, a Michigan resident; Dona Rhoades, an Indiana resident; Annette Tate, a Michigan resident; James Buggie, a Michigan resident; Hollis Liska, Personal Representative of the Estate of Cynthia Synold, Deceased, formerly a Michigan resident, Defendants.**

No. 1:90–CV–800.

United States District Court, W.D. Michigan.

March 17, 1993.

Drew F. Seaman, Straub, Seaman & Allen, St. Joseph, MI, for Allstate Ins. Co., Inc.

A. Howard Williams, Doran, Blackmond, Ready, Hamilton & Williams, South Bend, IN, R. McKinley Elliott, Bingham, Loughlin, Means & Mick, Mishawaka, IN, for Mark A. King and Linda Kay King.

Peter W. Smith, Peter Smith Law Offices, Niles, MI, for Peter William Rossow.

Michael D. Marrs, Michael D. Marrs, PC, Stevensville, MI, for Annette Tate, Hollis Liska, and Cynthia Synold.

OPINION

ENSLEN, District Judge.

This matter is before the Court on plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56(e). The standard for summary judgment is well-known, and I will

not repeat it here. In this action, plaintiff Allstate Insurance Company ("Allstate") seeks a declaratory judgment as to the rights of the parties involved in relation to an insurance policy issued to defendant Linda King.

*Facts*

This case is the result of a tragic car accident which occurred on December 18, 1988, which claimed the life of one person and resulted in serious injury to several others. It is undisputed that Allstate insured Ms. King's 1978 Chevrolet Impala ("Impala"). No other name and no other car appear on the "Declarations" page of the policy. However, the car involved in the accident which formed the basis of the underlying litigation in Michigan Circuit Court was a 1984 Pontiac Bonneville ("Pontiac"). This car was driven by Mark King, Linda King's husband, and was insured by the Horace Mann Insurance Company. The question is whether Ms. King's policy with Allstate extends to her husband's accident.

There is some dispute as to which insurance policy the Court should be considering. Allstate attached a policy form to its original complaint (hereinafter "policy one") which it represented was the policy of Ms. King. However, Allstate later asserted that it had mistakenly attached the wrong policy. On May 22, 1992, the Court granted Allstate permission to amend its complaint to include a different policy (hereinafter "policy two"). This switch of policies is the source of the pending counter-claim. Some of the defendants entered into conditional settlements, and they assert that their decision to do so was based on their analysis of policy one. Their counter-claim argues that if the Court finds that Allstate has a duty to defendants under policy one, but not policy two, Allstate should be equitably estopped from asserting that policy two governs. It is Allstate's position that it has no duty to provide liability insurance coverage in regard to the December 18, 1988, multi-vehicle accident under *either* policy.

The construction of the policies is a matter of law. I will first analyze Allstate's obligation under each policy. If it is found to have no obligation under either policy, then I need not reach the issue of equitable estop-

pel, and defendants' counter-claim must be dismissed as a matter of law.

*Policy One*

The dispute surrounding the first policy focuses on the following sections.

**DEFINITIONS**

A. Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

\* \* \* \* \* \*

F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

\* \* \* \* \* \*

J. "Your covered auto" means:

1. Any vehicle shown in the Declarations.

\* \* \* \* \* \*

**INSURING AGREEMENT**

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. . . .

B. "Insured" as used in this part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

\* \* \* \* \* \*

**EXCLUSIONS**

\* \* \* \* \* \*

B. We do not provide Liability Coverages for the ownership, maintenance or use of:

\* \* \* \* \* \*

2. Any vehicle, other than "your covered auto," which is:

a. owned by you; or

b. furnished or available for the regular use of any "family member".

3. Any vehicle, other than "your covered auto", which is:

a. owned by any "family member"; or

b. furnished or available for the regular use of any "family member".

However, this exclusion (B.3) does not apply to your maintenance or use of any vehicle which is:

a. owned by a "family member"; or

b. furnished or available for the regular use of a "family member".

■ When read in isolation, the "Insuring Agreement" section provides that Mark and Linda King are insured while driving any auto. Defendants first argue that this section should be interpreted to mean the policy was intended to cover Linda and her spouse Mark, regardless of what car they were driving. However, insurance contracts must be read as a whole. *VanDyke v. League General Insurance*, 184 Mich.App. 271, 275, 457 N.W.2d 141 (1990). The "Insuring Agreement" section must be read in tandem with the subsequent "Exclusions" section, which appears on the next page of the policy.

Exclusions B.2 and B.3 are somewhat confusing. On their face, they seem to say that the insurance policy does not apply to any car but the Impala, except when "you" use (or maintain) a car owned by (or furnished to) a family member.

Defendants' argument hinges on the fact that Mark King is included in the definition of "you" and "your" because he is Linda King's spouse, and he is also included in the definition of "family member," because he is related to Linda King by marriage. Defendants argue that because Mark King fits in both definitions, B.2 and B.3 state that he is excluded if driving any car other than the Impala. However, immediately thereafter the policy states that these exclusions do not apply to Mark King's ("your") use of a car he owns ("family member"). Defendants conclude that exclusions B.2 and B.3 are inconsistent, irreconcilable, and ambiguous, and the Court must choose the construction which is most favorable to the policy holder.

The Michigan Supreme Court has instructed that when there are two fair readings of a policy, one which would deny coverage and another which would grant it, "the contract is ambiguous and should be construed against its drafter and in favor of coverage." *Raska*

*v. Farm Bureau Mutual Insurance Company of Michigan*, 412 Mich. 355, 361–62, 314 N.W.2d 440 (1982). *See also, Powers v. Detroit Auto Inter–Insurance Exchange*, 427 Mich. 602, 398 N.W.2d 411 (1986); *Yahr v. Garcia*, 177 Mich.App. 705, 442 N.W.2d 749 (1989); *Lamotte v. Millers National Insurance Company*, 180 Mich.App. 271, 446 N.W.2d 632 (1989). However, while there may be several *possible* reading in this case, I believe that there are only two *fair* readings, neither of which would extend coverage to defendants in this situation.

■ I believe that the "However" clause after exclusion B.3 clearly refers to *two* individuals: "you" and a "family member." Although Mark King could be put in either category, in order to achieve the reading which defendants favor, Mark King must fill the shoes of what is clearly intended to be two different people. Under defendants' interpretation, this clause would state:

However, this exclusion (B.3) does not apply to Mark King's maintenance or use of any vehicle which is:

a. owned by Mark King; or

b. furnished or available for the regular use of Mark King.

In other words, this clause would be read to *completely* defeat the exclusions listed above it, which stated that the insurance extended only to the vehicle listed on the declarations page, "your covered auto." This insurance policy was sold to Linda King and it covered her Impala. I do not believe that a reading which extends it to cover her husband while driving any car he owns is a "fair" reading. If that were the case, why would the Kings have bothered to have Mark's Pontiac insured by another company at all?

I conclude that one fair reading would put Mark King in the category of "you and your," such that if he were driving the car of a family member related by marriage, such as a sister-in-law or a step-son, he would be covered. Another fair reading would put him in the category of "family member," such that if Linda King were driving a car owned

by her husband, she would be covered.[1] However, I think that it stretches the limits of imagination to construe a contract sold to Linda King to cover her Impala as also covering her husband while he drives his Pontiac, and call it a "fair reading." Because the reading defendants offer does not make sense, and there are two alternative constructions which do, I hold that Policy One does not extend coverage to Mark King in this situation.

For these reasons, I hold that policy one did not extend coverage to Mark King while he was driving a car he owned.

*Policy Two*

The second policy clearly does not cover Mark King while he is driving his Pontiac, because that car does not fall under the unambiguous definitions of "owned automobile" and "non-owned automobile." *VanDyke v. League General Insurance*, 184 Mich.App. 271, 457 N.W.2d 141 (1990), considers a similar contract and arrives at the same result. This conclusion appears to be apparent to defendants as well, for on page 4 of the Kings' brief, they state "the 'new' second policy sought to be enforced by Allstate would in all probability deny coverage on the basis of the policy language," and they offer no argument in their brief that the second policy does extend coverage. I therefore will not belabor the point. The second policy offers no coverage for this accident.

*Defendants' Motion for Partial Summary Judgment*

As defendants acknowledge[2], the fact that I have concluded that neither insurance policy extended coverage to Mark King while he drove a car he owned renders defendants' motions for summary judgment moot. Therefore, they will be denied as such.

*Conclusion*

I extend heartfelt sympathies to all involved in this accident. I agree that a portion of the first policy is ambiguous, because it is capable of two fair readings. Unfortunately, neither of these fair readings extends coverage to the injured parties in this circumstance.

### JUDGMENT

In accordance with the Opinion issued on this date;

IT IS HEREBY ORDERED that plaintiff's motion for summary judgment (dkt. # 98), filed December 1, 1992, is GRANTED.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (dkt. # 99), filed December 7, 1992, is DENIED AS MOOT.

IT IS FURTHER ORDERED that defendants' cross motion for summary judgment (dkt. # 103), filed December 31, 1992, is DENIED AS MOOT.

---

1. I therefore believe that Allstate's position that Mark King *must* be considered "you," and cannot be considered·a "family member" under any circumstance is an unduly restrictive interpretation. If it intended spouses to be excluded from the definition of family member when it fits in the category of "you," it should have stated its intention in its policy.

2. See brief of defendant Tate at point 8, brief of defendant Rossow at point 8, brief of defendants King at point 7.