TURNER ASSOCIATES,
INC., Plaintiff,

v.

SMALL PARTS, INC., Defendant.

Civil No. 98–40233.

United States District Court,
E.D. Michigan,
Southern Division.

July 30, 1999.

Stephen K. Valentine, Jr., Valentine Assoc., West Bloomfield, MI, for plaintiff.

David E. Wright, Bradley C. Morris, Johnson, Smith, Indianapolis, IN, Francis R. Ortiz, Dickinson, Wright, Detroit, MI, for defendant.

***MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO STRIKE PORTIONS OF THE AFFIDAVIT OF RONALD TURNER; DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT***

GADOLA, District Judge.

Presently before the Court are three motions. The first is a motion for summary judgment filed on April 15, 1999 by defendant Small Parts, Inc. (hereinafter "Small Parts"). The above-captioned diversity case involves claims for breach of contract, quantum meruit, and declaratory relief. On May 26, 1999, plaintiff Turner Associates, Inc. (hereinafter "Turner") filed its responsive brief to defendant's motion, as well as its own motion for partial summary judgment. Defendant submitted a reply brief and response to plaintiff's motion for partial summary judgment on June 4, 1999. On the same day, defendant filed a motion to strike portions of the affidavit of Ronald Turner. Oral argument on the defendant's motion for summary judgment, plaintiff's motion for par-

tial summary judgment, and defendant's motion to strike the affidavit of Ronald Turner was heard on July 28, 1999.

For the reasons set forth below, the Court will deny defendant's motion to strike portions of Ronald Turner's affidavit, deny defendant's motion for summary judgment, and deny plaintiff's motion for partial summary judgment.

## I. Factual Background

Defendant Small Parts is an Indiana corporation which manufactures parts used mainly in automobiles. Defendant sells its products to manufacturers through its internal sales force and also through sales representatives. *See* Aff. of Michael Jordan, ¶¶ 2–3, attached as Exh. 1 to defendant's brief in support of motion for summary judgment.

According to *defendant*, it had a contract with plaintiff Turner Associates which allegedly established plaintiff's right to 12 months of post-termination commissions. The parties are *in dispute* as to whether any such contract in fact existed. Defendant maintains that the purported contract was entered into between defendant and plaintiff and memorialized in a November 23, 1977 memorandum from defendant to plaintiff, formerly known as Schuster–Allen Associates, Inc. *See* Exh. C attached to Aff. of Michael Jordan. In 1986, Ronald Turner purchased 100% of the shares of Schuster–Allen, and thereafter changed the firm name to Turner Associates, Inc.

Plaintiff, on the other hand, contends that at the time Mr. Turner purchased Schuster–Allen, he understood its relationship with defendant to be "essentially a handshake deal" and that plaintiff would be paid a commission on all business that it was involved in developing. According to *plaintiff*, other correspondence sent from other sales representatives to Michael Jordan of defendant-company indicate that there was no agreement reached between the parties regarding post-termi-

nation commissions in 1977. *See* Exhs. 2A and 2B to plaintiff's brief in response.

Defendant explains the genesis of the alleged November 1977 agreement as follows: Michael Jordan, formerly defendant's vice-president of marketing, is currently the president of the company. In his capacity as vice-president, Jordan called defendant-company's first national sales meeting on October 5–7, 1977. *See* Aff. of Michael Jordan, ¶ 4. According to defendant, the purpose of the meeting was for all the sales representatives to meet and discuss various issues relating to their relationship with defendant. Frank Schuster, president of Schuster–Allen, plaintiff's predecessor company, attended the meeting on behalf of Schuster–Allen. Following the meeting, Schuster sent a letter dated October 10, 1977 to Jordan, confirming Schuster's attendance and thanking Jordan for a helpful meeting. *See* Exh. B to Aff. of Michael Jordan. As plaintiff points out, in the October 10, 1977 letter, Schuster did not acknowledge any agreement between the parties. *See id.*

After the meeting, defendant maintains that Jordan memorialized the terms of the alleged agreement in a letter-memorandum dated November 23, 1977. *See* Exh. C attached to Aff. of Michael Jordan. The memorandum states, in pertinent part, as follows:

> We also agreed upon the payment of earned commissions in the case of termination by the Company or by death for a period of one month for each year of service to a max of 12 months. Payments would be made to the estate of the Rep Organization as the particular case might dictate.

*Id.* The document is addressed to "All Sales Representative Organizations." Michael Jordan alleges that "this letter was sent to Schuster–Allen and other sales representatives." Aff. of Michael Jordan ¶ 9. *However*, plaintiff denies that Schuster–Allen ever received the November 23, 1977 letter-memorandum. Furthermore, plaintiff's custodian of records, Ronald Turner, cannot find the memorandum in the files of Schuster–Allen.

As mentioned above, Ronald Turner purchased the common stock of Schuster–Allen in 1986. Defendant maintains that the change in ownership did not alter the terms of the purported termination agreement between defendant Small Parts and plaintiff Turner Associates, formerly known as Schuster–Allen. (*See* Aff. of Michael Jordan, ¶ 10; Depo. of Ronald Turner, p. 115). According to Jordan, neither defendant nor Schuster–Allen modified or amended the purported termination agreement. *See* Aff. of Michael Jordan, ¶ 11.

In 1997, defendant allegedly terminated its relationship with plaintiff Turner Associates, effective October 1, 1997. *See* Aff. of Michael Jordan, ¶ 12. Plaintiff, however, disputes the October 1, 1997 termination date. Instead, according to plaintiff, the parties' relationship continued until January 22, 1998. Therefore, plaintiff alleges that the correct termination date is January 22, 1998.

Defendant admits that at the time of termination "Mr. Jordan, and others at Small Parts, had forgotten about the existence of the Termination Agreement." Defendant's brief, p. 4 (citing Aff. of Michael Jordan, ¶ 13). As a result, defendant further admits that "in negotiations concerning plaintiff's termination and the payment of post-termination commissions, defendant *incorrectly* took the position that plaintiff had no contract with defendant." *Id.* (emphasis added). Shortly after Mr. Jordan rediscovered the termination agreement in defendant-company's files, defendant's counsel notified plaintiff's counsel of the terms of the agreement and tendered the remaining commission allegedly owed to plaintiff. *See* Aff. of Michael Jordan, ¶ 15 and Exh. D attached thereto. Defendant proffered a check in the amount of $179,247.45, made payable to plaintiff Turner Associates. The check, however, was rejected by plaintiff.

On May 28, 1998, plaintiff filed its complaint in Oakland County Circuit Court, State of Michigan, alleging breach of an oral and/or implied contract based on defendant's failure to pay plaintiff post-termination commissions for sales made after termination. Specifically, plaintiff alleges that the parties agreed that plaintiff would be "entitled to commissions on all business in which it was involved for the life of those parts or programs." Complaint ¶ 12. Plaintiff also claims entitlement, in the alternative, to post-termination commissions under a quantum meruit or unjust enrichment theory. Complaint ¶¶ 16–21.

On June 30, 1998, the above-entitled case was removed from state court pursuant to 28 U.S.C. § 1441. Federal jurisdiction was premised on diversity of citizenship pursuant to 28 U.S.C. § 1332, plaintiff being a Michigan corporation and defendant being an Indiana corporation. Plaintiff did not contest removal.

## II. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. See *U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

The instant case involves basic principles of contract law. The crucial issue presented is whether the parties entered into a valid and enforceable contract governing the payment of post-termination commissions to plaintiff. Before embarking upon a discussion of the substantive issues regarding the alleged contract, the Court must first address defendant's motion to strike paragraphs 6, 10 and 11 of

the affidavit of Ronald Turner, president of plaintiff Turner Associates. See Exh. 1 of plaintiff's brief in response. The affidavit concerns, *inter alia*, matters relating to plaintiff's purported acceptance.

### A. Defendant's Motion to Strike Portions of Affidavit of Ronald Turner

Pursuant to Federal Rule of Civil Procedure 56(e),

[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Defendant moves to strike paragraphs 6, 10 and 11 of the Turner Affidavit on the ground that these paragraphs contain inadmissible statements. Each of these paragraphs will be considered *seriatim*.

In Paragraph 6 of the affidavit, Turner testifies that "[b]ecause of the nature of the business our agency was involved in procuring for [defendant] ... our agency would have found such an arrangement [referring to the alleged agreement to 12 months of post-termination commissions embodied in the November 23, 1977 memorandum] unfair and unacceptable." Aff. of Ronald Turner, ¶ 6. Defendant maintains that this statement is conclusory, speculative and offered without a proper foundation.

██ The Court finds that this paragraph is admissible. Plaintiff has laid a proper foundation for this statement. As the prior paragraphs of the Turner Affidavit make clear, Ronald Turner became an employee of Johnston Cutting in 1973, which later became Schuster–Allen and then Turner Associates. See Aff. of Ronald Turner, ¶ 3. After a brief absence, Turner continued working for Johnston and later for Schuster–Allen, for which he continued to sell products and was heavily involved with its principals, including defendant Small Parts. See *id.*, ¶¶ 3–4. Given this lengthy involvement, the Court holds that plaintiff has laid a proper foundation for Turner to testify in paragraph 6 as to his assessment of the probable response such an offer by defendant-company would have received by Schuster–Allen in 1977.

In paragraph 10, Turner states that "[a]t and before the time I purchased Schuster–Allen, I understood that its relationship with [defendant] was a handshake deal where it would be paid a commission on all business it was involved in procuring and with post-termination commissions to be paid on that business for the life of the part or program." Aff. of Ronald Turner, ¶ 10. Defendant argues that because Turner did not own Schuster–Allen at the time it allegedly contracted with defendant, Turner could have no personal knowledge regarding any facts relating to the establishment of the contractual relationship between defendant and Schuster–Allen. Thus, according to defendant, this statement is speculative and without foundation, or in the alternative, is inadmissible hearsay.

As with paragraph 6, the assertion contained in paragraph 10 is based upon Turner's personal experience as an employee of the predecessor companies of Turner

Associates. Turner is providing his understanding of the alleged "handshake deal" between Schuster–Allen and defendant at the time of the alleged contractual arrangement in 1977. As such, there is nothing to indicate that Turner lacks the foundation to present his understanding of the alleged agreement between the parties.

 Furthermore, the Court disagrees with defendant's position that paragraph 10 contains inadmissible hearsay. Hearsay is defined in the Federal Rules of Evidence as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Since this is a statement made by a declarant while testifying (by affidavit), it is not in and of itself hearsay. Moreover, there is no suggestion that this statement is based on the out-of-court statement or statements of other witnesses. However, even if the statement is based on the records of plaintiff's company, the Court finds that the statement is admissible based on an exception to the hearsay rule. *See* Fed.R.Evid. 803(6) & (7).[1]

Pursuant to Federal Rule of Evidence 803, records kept in the ordinary course of business are not considered hearsay. *See* Fed.R.Evid. 803(6). In addition, the fact that a memorandum or other document is absent from records so kept in the ordinary course of business may be admitted to prove that the memorandum was never received. *See* Fed.R.Evid. 803(7). Plaintiff maintains in its response to defendant's motion to strike that prior to and as part of the acquisition of Schuster–Allen, Turner was the custodian of records for Schuster–Allen. Turner also was allegedly involved in the review and investigation of the relationship between Schuster–Allen and various principals, including defendant-company. As the custodian of records, the Court finds that Turner is thus qualified to speak to whether or not he was aware of any written agreement between the parties.

Lastly, in paragraph 11, Turner states that "[n]one of the files and records I acquired from Schuster–Allen contained any document memorializing the alleged arrangement between [defendant] and Schuster–Allen as set forth in the November 23, 1977 memo." Aff. of Ronald Turner, ¶ 11. As discussed immediately above, Turner, as the custodian of records, is entitled to report his inability to find any such document in the records acquired from plaintiff's predecessor company, Schuster–Allen. As provided in Federal Rule of Evidence 803(7), "[e]vidence that a matter is not included in the memoranda reports, records, or data compilations, in

---

1. Federal Rule of Evidence 803 provides in relevant part as follows:

 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
 \*\*\*
 (6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

 (7) Absence of entry in records kept in accordance with the provisions of paragraph (6). Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

 Fed.R.Evid. 803(6) & (7).

any form ... [is admissible] to prove the nonoccurrence or nonexistence of the matter...." Fed.R.Evid. 803(7). The rule further provides that such evidence is allowed "unless the sources of information or other circumstances indicate lack of trustworthiness." *Id.* In the case at bar, there is nothing to suggest lack of trustworthiness with respect to the sources of information, i.e. the records of plaintiff's predecessor company, or with respect to any other circumstances.

In accordance with the foregoing considerations, this Court will deny defendant's motion to strike paragraphs 6, 10 and 11 of Ronald Turner's Affidavit.

## B. Defendant's Motion for Summary Judgment

Defendant has proffered a letter-memorandum dated November 23, 1977 from Michael Jordan, then vice-president of defendant-company, addressed to "all sales representative organizations." According to defendant, this memorandum establishes a contractual arrangement between defendant and Schuster–Allen, now known as plaintiff Turner Associates. Defendant further argues that Schuster–Allen's acceptance of the terms of the contract was manifested by its silence in not disputing the contractual modification and by its continued performance as a sales representative for defendant.

■ Plaintiff, in response, argues that there is no evidence establishing that defendant's alleged offer of November 23, 1977 was ever *communicated* to plaintiff. It is basic hornbook law that an offer to be valid must be communicated to an offeree. *See Consolidated Properties, Inc. v. Henry Ford Trade School Alumni Ass'n,* 7 Mich. App. 383, 390, 151 N.W.2d 884 (1967). According to plaintiff, Ronald Turner was unaware of any agreement as described in the November 23, 1977 memorandum. Moreover, the files of Schuster–Allen did not disclose the receipt of the memorandum nor did they contain the alleged agreement. Plaintiff further contends that

even assuming *arguendo* that the memorandum represents an offer which plaintiff received and accepted through its silence, defendant by its actions and/or inactions abandoned the agreement or is estopped from relying upon it. *See Nelson v. Hacker,* 278 Mich. 383, 386, 270 N.W. 720 (1936); *see also Freeman v. Mass. Mut. Life Ins. Co.,* 27 Mich.App. 572, 581, 183 N.W.2d 832 (1970). Plaintiff also argues, in the alternative, that the contract even if valid is ambiguous and its construction is therefore a matter for the trier of fact. *See Brown v. Forrester Constr. Co.,* 372 Mich. 204, 125 N.W.2d 315 (1963).

■ It is well-established that in order for a contract to be enforceable there must be a valid offer, a valid acceptance, and adequate consideration. The very first and threshold issue is whether defendant made a valid offer to plaintiff's predecessor, Schuster–Allen, to provide the latter with commissions for a maximum period of 12 months post-termination. There exists a genuine issue of material fact whether in fact this offer was ever communicated to Schuster–Allen. Turner, the current president of plaintiff-company, testifies that the files of Schuster–Allen, of which he was and is the custodian, do not disclose the existence of any such memorandum. Defendant is unable to proffer any evidence that the November 23, 1977 memorandum was sent to and received by Schuster–Allen, beyond the unsupported claim made in Johnson's affidavit that the same was sent to all sales representatives. No mailing list or other indicia that the memorandum was actually sent has been produced.

Moreover, plaintiff has put forth letters written by other sales representatives of defendant Small Parts and dated after the national sales meeting which occurred October 5–7, 1977. In a letter dated October 10, 1977, sent by William C. DeLullo of Precision Components, Inc. to Michael Jordan of defendant-company, DeLullo states as follows: "You asked me to write

back to you may opinion of Section 13 in the discussion topics during the sales meeting regarding the termination of agreement...." Exh. 2A to plaintiff's brief. In the last paragraph, DeLullo concludes, "I hope I have helped with my thoughts on the above ... I think you will see very similar answers from all the other agencies." *Id.* A letter dated October 11, 1977 from Thomas R. Krueger, Inc. to Jordan confirms that "[d]uring the roundtable discussion [Jordan] asked [the sales representatives] to respond to the subject of death of the representative as well as retirement." Exh. 2B to plaintiff's brief.

In view of the letters provided by plaintiff, it is apparent that, at least with respect to these representatives, there was no agreement finalized as to the post-termination commissions. Instead, the record appears to indicate that negotiations were ongoing at the time of the October 1977 meeting. If this is an accurate portrait of the state of affairs which existed in November 1977, then the memorandum allegedly sent from defendant to plaintiff's predecessor would represent an *offer* for a 12 month maximum for post-termination commission. However, the offer had to have been accepted by Schuster–Allen to create a valid contract.

At oral argument held July 28, 1999, plaintiff attempted to proffer three affidavits, allegedly in further support of its position that defendant never sent out the November 23, 1977 memorandum-letter. The three affidavits are of William DeLullo, John Lanzillo, III, and John "Zonk" Lanzillo, Jr. The Court refuses to consider these affidavits due to the untimeliness of their submission. Nevertheless, the Court finds that even without the proffer of these affidavits, plaintiff has succeeded in raising a genuine triable issue as to whether the November 23, 1977 memorandum was ever communicated to Schuster–Allen. As mentioned above, defendant has produced no evidence that the memorandum in question was sent to and received by Schuster–Allen. Johnson's unsupported claim in his affidavit that it was mailed to all representatives is insufficient, especially in light of defendant's admission that Johnson "had forgotten about the existence of the Termination Agreement" until after the instant lawsuit had been initiated. *See* defendant's brief, p. 4 (citing Aff. of Michael Jordan, ¶ 13).

The Court further finds, even assuming *arguendo* an offer was communicated to Schuster–Allen, that there exists a genuine issue of material fact as to whether plaintiff's predecessor ever accepted the offer. Defendant maintains that "acceptance of the terms of the contract is manifested by its silence in disputing this contractual modification and its continued performance as a sales representative for [defendant]." Defendant's brief, p. 6 (citing *Ensign Painting Co. v. Alfred A. Smith, Inc.,* 385 Mich. 268, 272, 188 N.W.2d 534 (1971)); *Wadsworth v. N.Y. Life Ins. Co.,* 349 Mich. 240, 84 N.W.2d 513 (1957).

However, the general rule is that silence alone will not constitute a valid acceptance. *See Gorham v. Peerless Life Insurance Company,* 368 Mich. 335, 340, 118 N.W.2d 306 (1962). Only in special circumstances will a party be bound by mere acquiescence. *See Wadsworth v. New York Life Insurance Company,* 349 Mich. 240, 84 N.W.2d 513 (1957) (citing 12 Am.Jur., Contracts § 40) ("'There is a legal acceptance where silence is accompanied by acts of the offeree, such as exercise of dominion over things offered to him, which warrant an inference of assent'"); *Wilkinson v. Lanterman,* 314 Mich. 568, 573, 22 N.W.2d 827 (1946) ("[m]ere silence may not, under ordinary circumstances at least, be construed as indicating consent, but under circumstances of the character here involved the doing of affirmative acts may properly be regarded as evidencing such consent, and the opposite party to the agreement is entitled to rely thereon").

Defendant cites two principal cases for the proposition that mere silence may constitute an acceptance. *See Ensign Paint-*

*ing Co. v. Alfred A. Smith, Inc.*, 385 Mich. 268, 272, 188 N.W.2d 534 (1971) and *Wadsworth v. N.Y. Life Ins. Co.*, 349 Mich. 240, 84 N.W.2d 513 (1957). However, neither case is helpful to defendant's position.

In *Ensign Painting*, a subcontractor brought suit against a general contractor to collect an amount allegedly due for work done. The defendant in that case claimed that a purchase order contained the terms of the contract which was accepted when plaintiff performed the work. The Michigan Supreme Court opined that

> if the plaintiff in this case had rendered performance required by the purchase order without objecting to its provisions plaintiff might be found thereby to have accepted the provisions of the purchase order. . . .

385 Mich. at 272, 188 N.W.2d 534. However, the Court continued that

> [i]t is, of course, a factual question to be resolved by the trier of fact whether an oral contract was entered into before, and reaffirmed during conversations that took place after, receipt by the plaintiff of the purchase order.

*Id.* at 273, 188 N.W.2d 534. The high court thus reversed and remanded the case to the trial court for consideration of plaintiff's proffered evidence on the issue of whether defendant's purchase order, neither signed nor accepted in writing by plaintiff, represented the parties' contractual agreement.

In *Wadsworth*, plaintiff-beneficiary brought an action against defendant-life insurance company. Defendant-insurer argued that it had responded to decedent's application for an ordinary life policy with a counter-proposal to issue a policy containing an aviation waiver. According to defendant, there was thus no contract. In the court below, a directed verdict had been granted in favor of defendant. The Michigan Supreme Court vacated the lower court's judgment, holding that plaintiff's evidence had been sufficient to take to the jury the question whether decedent's application had been "accepted" by defendant-insurer prior to decedent's death. 349 Mich. at 252–53, 84 N.W.2d 513.

From the cases discussed immediately above, even if this Court had found that the November 23, 1977 memorandum represented a valid offer, under Michigan law whether in fact defendant had accepted that offer in spite of its silence is a question of fact for the jury's consideration.

■ Moreover, the alleged contract appears to be ambiguous in that it is capable of more than one interpretation. According to plaintiff, the language in the memorandum *does not specify whether commissions are earned when business is placed, or when production has started, or alternatively for any business developed within the 12 month post-termination period.* As a consequence, the Court finds that even if the contract is effective, it is ambiguous. It is well-established that interpretation of an ambiguous contract is an issue for the jury to decide. *See Brown v. Forrester Constr. Co.*, 372 Mich. 204, 210–11, 125 N.W.2d 315 (1963) (holding that question whether there had been oral agreement for extra work by subcontractor was for jury); *Zinchook v. Turkewycz*, 128 Mich. App. 513, 521, 340 N.W.2d 844 (1983) (holding that although contract construction is ordinarily a question of law for court, where language used is ambiguous or incomplete, or circumstances are unusual, substance of parties' agreement is question of fact for jury).[2]

---

**2.** Since a genuine issue of material fact exists as to whether a contract was ever entered into in the first place, the Court need not discuss the issue of whether defendant abandoned the contract or whether defendant should be estopped from relying upon it. However, it is worthy of mention that in the termination letter sent to plaintiff dated September 18, 1997, defendant states as follows: "We offer to Turner Associates, Inc. without prejudice of any other rights, and recognizing that *no formal contract* exists between our two companies. . . ." Exh. 3 to plaintiff's brief (emphasis added). In subsequent letters dated November 3, 1997 and November 10, 1997, defendant again denied the existence of

It should also be mentioned that a factual dispute exists with regard to the termination date of plaintiff's relationship with defendant. According to defendant, as stated above, defendant allegedly terminated its relationship with plaintiff Turner Associates, effective October 1, 1997. *See* Aff. of Michael Jordan, ¶ 12. Plaintiff, however, disputes the October 1, 1997 termination date. Instead, according to plaintiff, the parties' relationship continued until January 22, 1998. Plaintiff therefore maintains that the correct termination date is January 22, 1998. This represents another genuine issue of material fact because the exact termination date will be a crucial consideration impacting the appropriate amount of post-termination commissions, if any, due to plaintiff.

■ Defendant has not satisfied its burden of demonstrating the absence of all genuine issues of material fact pursuant to Federal Rule of Civil Procedure 56. There still remain several issues appropriate for trial. Moreover, whether plaintiff is entitled to quantum meruit is dependent upon the antecedent factual issues of (1) whether Schuster–Allen ever received an offer from defendant and (2) assuming it received the offer, whether plaintiff's predecessor accepted the offer. Plaintiff would be foreclosed from quantum meruit *only if* it is first established that a valid and enforceable contract governed defendant's payment of post-termination commissions. *See Terry Barr Sales Agency v. All–Lock Co., Inc.*, 96 F.3d 174, 181 (6th Cir.1996); *see also Advanced Plastics Corp. v. White Consol. Indust., Inc.*, 828 F.Supp. 484 (E.D.Mich.1993).[3]

In light of the above, the Court must deny defendant's motion for summary judgment.

### C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment based upon the allegation that defendant "has admitted" that it is liable to plaintiff, at a minimum, in the amount of $208,988.76. *See* Offer of Judgment, attached as Exh. 7 to plaintiff's brief. As mentioned previously, plaintiff has already rejected a check tendered by defendant in the amount of $179,247.45. Moreover, plaintiff alleges that it is entitled to an additional $29,741.31, because a check for that amount was also tendered to plaintiff and returned to defendant uncashed.

Defendant argues that partial summary judgment is *not* appropriate because plaintiff disputes the validity of the contract upon which such damages have been computed. The Court agrees. There is a genuine factual question surrounding the oral contract allegedly entered into between the plaintiff (actually, plaintiff's predecessor-in-interest) and defendant. As such, it would be premature to award partial summary judgment to plaintiff. Plaintiff has not overcome *its* burden of demonstrating the absence of all genuine issues of material fact. The exact amount of commissions due and owing to plaintiff has not been established. Accordingly, the Court will deny plaintiff's motion for partial summary judgment.

### *ORDER*

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant's motion to

---

any agreement between the parties. *See* Exhs. 5A and 5B to plaintiff's brief (stating that "for you to assume any contract, written or verbal, existed between [defendant] and [plaintiff] prior to [the date Turner purchased the firm from Schuster] would be incorrect").

**3.** Plaintiff's entitlement to statutory relief pursuant to the Michigan Sales Representatives' Commissions Act, M.C.L. § 600.2961 also presents a genuine issue of material fact appropriate for the jury. That section provides

that a principal who is found to have "intentionally failed" to pay the commission when due may be liable for an amount equal to *twice* the amount of commissions due or $100,000.00, whichever is less. M.C.L. § 600.2961(5)(b). Summary judgment is not appropriate when motive, intent, credibility, or state of mind are at issue. *See Michigan Nat'l Bank–Oakland v. Wheeling*, 165 Mich. App. 738, 743–44, 419 N.W.2d 746 (1988).

strike paragraphs 6, 10 and 11 of the affidavit of Ronald Turner is **DENIED;**

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment is **DENIED;**

**IT IS FURTHER ORDERED** that plaintiff's motion for partial summary judgment is **DENIED.**

**SO ORDERED.**